UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
DEVROL PALMER,                       :  07 Civ. 5917 (PKC) (JCF)
                                     :
            Petitioner,              :      REPORT AND
                                     :      RECOMMENDATION
      - against -                    :
                                     :
L. MARSHALL,                         :
                                     :
            Respondent.              :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE P. KEVIN CASTEL, U.S.D.J.:

     Devrol Palmer brings this petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254, challenging his conviction in New
York State Supreme Court, Bronx County for engaging in a Course of
Sexual Conduct Against a Child in the First Degree in violation of
New York Penal Law § 130.75.  Mr. Palmer's claims may be grouped
into five categories.  He contends that (1) the verdict was against
the weight of the evidence and the proof insufficient to prove his
guilt beyond a reasonable doubt; (2) by proceeding to trial without
requiring the prosecution to provide a supplemental bill of
particulars, the trial court acted without jurisdiction and
deprived him of due process; (3) the indictment was insufficient
because it failed to provide specific information, including when
and where the criminal conduct occurred; (4) the trial court should
have granted a mistrial or stricken the testimony of the
prosecution's expert witness because that witness' testimony was
based on inadmissible information obtained from the prosecutor and
violated the petitioner's confrontation rights; and (5) trial

1

counsel was ineffective in that (a) he neglected to object to the trial court's failure to enforce a prior order requiring the prosecution to submit a supplemental bill of particulars, (b) he failed to seek a stay until the supplemental bill of particulars was provided, (c) he failed to call the petitioner's wife as a witness at trial, (d) he failed to use a number of available documents to impeach the victim's testimony, and (e) he failed to present evidence that the petitioner had an infectious disease that would have been transmitted to the victim if they in fact had sexual contact.

For the reasons that follow, I recommend that the petition be denied.

Background

Tiffany T.[1] was born on September 4, 1990 to Dwight T. and Suckeen Palmer. (Tr. at 4, 84).[2] Sometime thereafter, Tiffany's biological parents separated, and by 1999, Dwight T. had moved to Georgia. (Tr. at 85, 149). Suckeen began dating Devrol Palmer in 1992 and married him on May 21, 1995. (Tr. at 413-14). They had a child, Devrol Palmer, Jr., in 1994. (Tr. at 414).

Beginning in 1989, Mr. Palmer worked as a carpenter for a

---

[1] Because Tiffany was the victim of a sex offense, she and her father (who shares the same last name) will be identified here by first name and last initial in order to preserve confidentiality. See N.Y. Civ. Rights Law § 50-b(1).

[2] "Tr." refers to the transcript of Mr. Palmer's trial.

2

company owned by his cousin and also took occasional jobs in construction. (Tr. at 416-17). Suckeen was also employed from time to time. (Tr. at 437). When both parents were at work, the children were left with a babysitter or with Sandra Hutchinson, the petitioner's sister. (Tr. at 402, 404-07, 437-38). The petitioner was sometimes physically abusive toward Suckeen, slapping her in front of Tiffany. (Tr. at 12-13, 89-90, 168).

Because Mr. Palmer's employment was sporadic, he was sometimes home with the children during the day without their mother. (Tr. at 417, 437-38). On one occasion, when Tiffany was six years old, Mr. Palmer asked her, "If I do something, will you promise not to tell?" (Tr. at 9-10). When Tiffany acquiesced, the petitioner had her lie down on his bed, opened her legs "[i]n a V shape," and "put his penis in [her] vagina." (Tr. at 8-11). According to Tiffany, this caused her pain, but she did not tell her mother because she was afraid that Mr. Palmer would hurt her or her mother. (Tr. at 10-12, 81, 167).

This pattern was repeated frequently over the next few years. Sometimes, the petitioner would place his penis in Tiffany's vagina once or twice in a week; in other weeks, he would not have sexual contact with her at all. (Tr. at 13). On one occasion, he lifted her onto the bathroom sink and had vaginal intercourse with her while he was standing. (Tr. at 15-16). The petitioner also had anal intercourse with Tiffany. When this occurred, Tiffany would

lie on her stomach and Mr. Palmer would sit on her legs and put his penis in her "butt." (Tr. at 16-18). On one occasion, the petitioner had Tiffany perform fellatio on him, after which she washed out her mouth in the bathroom. (Tr. at 20-22). Finally, Mr. Palmer would sometimes take Tiffany's hand and rub it on his underwear over his penis. Once, according to Tiffany, "white stuff came out that looked like -- like skim, kind of like skim milk." (Tr. at 28-31). The last sexual contact that the petitioner had with Tiffany was allegedly on April 2, 2000, when Tiffany's mother was at the gym. On that occasion, he put his penis through the hole of his boxer shorts into Tiffany's vagina. (Tr. at 32-34).

Suckeen was never home during these incidents, which took place "mainly in the morning or the afternoon." (Tr. at 22, 152-53). Devrol, Jr. was at home, but he was usually in Tiffany's bedroom or the living room, and Tiffany did not call out to him because she was afraid that he would tell her mother and then the petitioner would "hurt one of us." (Tr. at 18-19). Sometimes Devrol, Jr., who was then five or six years old, would become frightened and wander into the master bedroom, and the petitioner would pull the sheets up over himself and Tiffany. (Tr. at 25-26).

In the summer of 1999, Tiffany spent a week or two with her biological father in Georgia. However, she did not tell him about the abuse. (Tr. at 86, 93-94, 107-08). She first revealed it to a friend named Melissa in about March of 2000. (Tr. at 34, 82,

110).  On April 3, 2000, Tiffany watched a television program in which Oprah Winfrey encouraged children to report physical abuse. (Tr. at 35-37, 104, 109).  The next day, after Melissa told Tiffany's fourth grade teacher that "something was going on with Tiffany," the teacher asked Tiffany if there was something she wished to talk about.  At first, Tiffany was silent but then acknowledged that she was being sexually abused and began to cry. (Tr. at 186-91).  The teacher brought Tiffany to a guidance counselor who interviewed her, after which the school contacted Tiffany's mother and the police.  (Tr. at 38, 191-92).

Tiffany was then taken to the Montefiore Medical Center Child Protection Center where she was interviewed by social workers and detectives and then examined by Evelyn Chapman, a pediatric nurse practitioner.  (Tr. at 39, 198, 228-30).  The physical examination revealed the absence of hymenal tissue on the lower part of her hymen and scarring from a healed tear of the hymen, which indicated that Tiffany's vagina had been penetrated on more than one occasion.  (Tr. at 232, 244-47, 249-51, 274-75, 286-87, 294-95). According to Ms. Chapman, the injury could only have been caused by penetration, and only by something larger than a finger.  (Tr. at 251-52, 282).  Ms. Chapman found no discharge or evidence of recent injury to the vaginal area.  (Tr. at 271-72, 283).

Mr. Palmer was arrested on April 4, 2000, and on April 21, 2000, a grand jury indicted him for a Course of Sexual Conduct

Against a Child in the First Degree in violation of New York Penal Law ("NYPL") § 130.75(1)(a), a Course of Sexual Conduct Against a Child in the Second Degree in violation of NYPL § 130.80(1)(a), two counts of Endangering the Welfare of a Child in violation of NYPL § 260.10(1), Rape in the First Degree in violation of NYPL § 130.35(3), and Sexual Abuse in the First Degree in violation of NYPL § 130.65(3). (Affidavit of Andrew S. Holland dated Nov. 5, 2007 ("Holland Aff."), ¶ 5 & Exh. 1).

Prior to trial, Mr. Palmer's attorney issued a demand for a bill of particulars. (Demand for Discovery and Bill of Particulars, attached as Exh. 2 to Holland Aff.). The prosecution responded, indicating that the petitioner was believed to have engaged in a course of sexual conduct with Tiffany between September 4, 1996 and March 31, 2000 by placing his penis in her vagina, mouth, and anus, and that he had placed his penis in her vagina on April 2, 2000. (Bill of Particulars, attached as Exh. 3 to Holland Aff.). Upon receiving this response, defense counsel made a motion seeking, among other things, a supplemental bill of particulars providing more specific information about the acts that Mr. Palmer was alleged to have committed, including the time, date, and location of each occurrence. (Notice of Motion and Affidavit in Support of Motion, attached as Exh. 4 to Holland Aff.). Justice Ira R. Globerman, who adjudicated the pretrial motions, granted the petitioner's application to the extent that it demanded that the

prosecution "provide defense counsel with any and all information in their possession which fixes or tends to fix the date of occurrence for each charged crime and to set out the specific conduct of which the defendant is accused with respect to each crime charged." (Decision dated Sept. 18, 2000, attached as Exh. 5 to Holland Aff.). The prosecution did not respond, and at the beginning of trial, Mr. Palmer's attorney asked the presiding judge, Justice Caesar Cirigliano, for an order precluding the prosecution's evidence of the acts predating April 2, 2000. (V.D. at 257-59).[3] Justice Cirigliano denied the motion, indicating that while he was sympathetic to defense counsel's concerns, the law permitted less specific notice with respect to crimes involving continuing conduct. (V.D. at 259-60).

At the time of the trial, Tiffany was ten years old. (V.D. at 256). Justice Cirigliano first determined that Tiffany was capable of testifying by questioning her outside the presence of the jury. (V.D. at 248-56). Tiffany then testified to the facts as described above, and Ms. Chapman testified about her physical examination of Tiffany. In addition, the prosecution presented an expert witness, Dr. Don Lewittes, whose testimony concerning child sexual abuse syndrome will be discussed below. The petitioner's sister, Ms. Hutchinson, testified for the defense, describing the petitioner's

---

[3] "V.D." refers to the transcript of pretrial proceedings labeled "voir dire" that also contains colloquy concerning oral motions made by defense counsel.

work schedule and the childcare arrangements for Tiffany, suggesting that there was little opportunity for Mr. Palmer to be alone with Tiffany.  Mr. Palmer also took the stand and described his work schedule as well as his relationship with his wife and with Tiffany.  He denied any inappropriate sexual contact with Tiffany whatsoever.  (Tr. at 418-19, 429, 447).  Finally, the defense presented an expert, Dr. Mark Taff, who testified that the injury to Tiffany's hymen as presented by Ms. Chapman was not consistent with penetration by an erect penis but could have been the result of penetration by a smaller object such as a finger or pencil.  (Tr. at 489, 497-98, 514-15, 518, 521).

At the conclusion of the trial, the jury found Mr. Palmer guilty of engaging in a Course of Sexual Conduct Against a Child in the First Degree but acquitted him of all counts relating specifically to conduct on April 2, 2000.  (Verdict Sheet, attached as Exh. 6 to Holland Aff.).  On August 8, 2001, Justice Cirigliano entered judgment on the jury verdict and sentenced the petitioner to a term of imprisonment of seventeen years.  (Holland Aff., ¶ 8).

Mr. Palmer appealed to the Appellate Division, First Department.  In the memorandum of law submitted by his counsel, he argued that (1) the verdict was against the weight of the evidence, (2) he was unlawfully compelled to proceed to trial notwithstanding the prosecution's failure to serve a supplemental bill of particulars as it had been ordered to do, and (3) the indictment,

even as supplemented by the bill of particulars, was not sufficiently specific. (Brief for Defendant-Appellant ("Pet. App. Br."), attached as Exh. 7 to Holland Aff.).  Mr. Palmer also submitted a <u>pro se</u> brief in which he argued that (1) in formulating his opinion, the prosecution's expert improperly relied on factual allegations made by the assistant district attorney, (2) the expert's opinion unfairly bolstered the testimony of the prosecution's fact witnesses, (3) the trial court erroneously denied the defense motion to strike the expert's testimony or declare a mistrial, and (4) trial counsel was ineffective for failing to impeach Tiffany's testimony with her prior inconsistent statements regarding the dates of the criminal conduct and a statement in a school assignment that she did not know anyone who had been sexually abused.  (<u>Pro Se</u> Appellate Brief ("<u>Pro Se</u> App. Br."), attached as Exh. 9 to Holland Aff.).

On May 27, 2004, the Appellate Division upheld Mr. Palmer's conviction.  <u>People v. Palmer</u>, 7 A.D.3d 472, 778 N.Y.S.2d 144 (1st Dep't 2004).  The court held, first, that the verdict was not against the weight of the evidence because it was based on a reasonable determination by the jury of the credibility of witnesses and resolution of conflicting expert testimony.  <u>Id.</u> at 472, 778 N.Y.S.2d at 144-45.  Next, the court found that the indictment was sufficient because the petitioner was charged with a continuing crime and the usual rules for specificity did not

apply. <u>Id.</u> at 472, 778 N.Y.S.2d at 145.  The Appellate Division further concluded that the petitioner had waived his right to a stay pending production of a supplemental bill of particulars and that, in any event, he had received adequate notice of the charges against him. <u>Id.</u> at 472-73, 778 N.Y.S.2d at 145.  The court then ruled that the petitioner's ineffective assistance of counsel claim turned on matters extrinsic to the record and could therefore only be pursued in a motion to vacate the judgment; to the extent that the record permitted review of these claims, the court found them to be without merit. <u>Id.</u> at 473, 778 N.Y.S.2d at 145.  Finally, the court rejected the petitioner's remaining claims, including those contained in his <u>pro se</u> brief. <u>Id.</u> at 473, 778 N.Y.S.2d at 145.  On September 23, 2004, the New York Court of Appeals denied leave to appeal. <u>People v. Palmer</u>, 3 N.Y.3d 710, 785 N.Y.S.2d 38 (2004).

On February 25, 2005, Mr. Palmer filed a motion pursuant to New York Criminal Procedure Law ("CPL") § 440.10 in New York State Supreme Court, seeking to vacate the judgment of conviction.  In that motion, he asserted (1) that the trial court did not have jurisdiction to proceed to trial because the prosecution had failed to provide a supplemental bill of particulars, and (2) trial counsel was ineffective in that he (a) failed to request a stay of the proceedings until such time that the prosecution supplied the supplemental bill of particulars, (b) failed to object that

proceeding to trial without the supplemental bill of particulars would violate "the law of the case," (c) failed to interview Suckeen Palmer and present her testimony at trial, (d) failed to cross-examine Tiffany about a separate claim of abuse that she later recanted, about prior inconsistent statements regarding when the abuse began, or about the statement in her class assignment denying knowledge of anyone who had been abused, and (e) failed to investigate the petitioner's medical condition or present evidence that he had had herpes since 1997 and would have transmitted the disease to Tiffany if he had sexual relations with her. (Notice of Motion to Vacate Judgment and Affidavit ("440.10 Motion"), attached as Exh. 10 to Holland Aff.). Justice Cirigliano denied the motion on October 25, 2005. (Decision dated Oct. 25, 2005 ("440.10 Decision"), attached as Exh. 12 to Holland Aff.). He found that the jurisdictional claim was procedurally barred because it should have been raised on direct review and that the ineffective assistance claims were without merit. (440.10 Decision at 4-7). On February 27, 2007, the Appellate Division denied the petitioner's application for leave to appeal this decision. (Holland Aff., ¶ 16).

Mr. Palmer then filed the instant petition.

Discussion[4]

    A. <u>Sufficiency of the Evidence</u>

    In Ground 1 of his Petition, Mr. Palmer argues that the verdict was contrary to the weight of the evidence. Such a challenge is purely a matter of state law grounded in New York Criminal Procedure law § 470.15(5); thus, it is not cognizable on federal habeas corpus review. <u>See Lemons v. Parrott</u>, No. 01 Civ. 9366, 2002 WL 850028, at *3 (S.D.N.Y. May 2, 2002) ("[A federal court] has no authority to review a weight of the evidence argument because it is a state law claim."); <u>accord Rodriquez v. Senkowski</u>, No. 03 Civ. 3314, 2004 WL 503451, at *26 (S.D.N.Y. March 15, 2004);

---

    [4] Prior to passage of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), factual findings made by a state court after an evidentiary hearing were presumed correct in a federal habeas proceeding, but federal courts were not required to defer to state court determinations of law and of mixed questions of law and fact. <u>See Thompson v. Keohane</u>, 516 U.S. 99, 107-12 (1995); <u>Brown v. Artuz</u>, 283 F.3d 492, 497 (2d Cir. 2002). Under the AEDPA, however, a writ of habeas corpus may not issue "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

    The AEDPA standard applies to this case since Mr. Palmer filed his petition after the Act's effective date. <u>See Brown</u>, 283 F.3d at 498 n.2. However, where, as here, the petitioner's claims fail under the less deferential pre-AEDPA standard, there is no need to conduct the AEDPA's more intricate analysis. <u>Cf. Kruelski v. Connecticut Superior Court for the Judicial District of Danbury</u>, 316 F.3d 103, 106 (2d Cir. 2003) (suggesting, in post-AEDPA cases, that habeas courts should assess first whether state court's ruling was erroneous under the "correct interpretation" of federal law at issue, then whether the ruling was unreasonable).

McBride v. Senkowski, No. 98 Civ. 8663, 2002 WL 523275, at *4 n. 2 (S.D.N.Y. April 8, 2002); Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001); Peralta v. Bintz, No. 00 Civ. 8935, 2001 WL 800071, at *5 (S.D.N.Y. July 16, 2001) (Petitioner "raises only the state law issue of whether the weight of the evidence supported his conviction. Because [petitioner] raises no cognizable federal issue, his petition must be denied."). Thus, to the extent that the petitioner only asks this Court to assess the weight of the evidence, his claim must be rejected.

However, in his petition, Mr. Palmer makes explicit reference to the Fourteenth Amendment to the United States Constitution (Addendum to Petition at 3), suggesting that he is also claiming that the evidence at trial was insufficient to demonstrate his guilt beyond a reasonable doubt. The standard for habeas corpus review of such claims is well established. There is a "very heavy burden placed upon a defendant challenging the sufficiency of the evidence underlying his conviction." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995)(internal quotation marks and citations omitted). "'The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999) (quoting Herrera v. Collins, 506 U.S. 390, 401 (1993)). The Court must "decide whether the record

13

is 'so totally devoid of evidentiary support that a due process issue is raised.'" Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994) (quoting Mapp v. Warden, New York State Correctional Institute for Women, 531 F.2d 1167, 1173 n.8 (2d Cir. 1976)).

A federal court reviewing a sufficiency of evidence claim does not make an independent determination as to whether the evidence demonstrates guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). Rather, the habeas court "stands in the shoes of the state trial court." Mallette v. Scully, 752 F.2d 26, 31 (2d Cir. 1984). In so doing, it must construe the evidence in the light most favorable to the prosecution, and defer to the jury's resolution of any conflicts in the testimony and to its assessment of the credibility of witnesses. Jackson, 443 U.S. at 319; see also Herrera, 506 U.S. at 401-02 (noting that court should ask only whether decision to convict was rational, not whether it was correct). "[A]s long as any competent evidence went to the fact-finders from which they could infer guilt beyond a reasonable doubt, the conviction will stand." Martin v. Scully, 748 F. Supp. 159, 164 (S.D.N.Y. 1990) (quoting McShall v. Henderson, 526 F. Supp. 158, 161 (S.D.N.Y. 1981)).

Mr. Palmer contends that "[t]he verdict was . . . based upon a witness [whose] testimony was so unbelievable, her testimony should not have been credited to support the verdict." (Addendum to Petition, at 3). However, a "habeas court must defer to the

assessments of the . . . credibility of the witnesses that were made by the jury and may not substitute its view . . . for that of the jury[.]" <u>Frazier v. New York</u>, 187 F. Supp. 2d 102, 109-10 (S.D.N.Y. 2002)(citing <u>Herrera</u>, 506 U.S. at 401-02). Here, the jury's determination was amply supported by the evidence. As is apparent from the previous discussion of the facts, Tiffany's testimony was specific and detailed. It was corroborated by Ms. Chapman's testimony regarding the evidence of physical injury. Finally, Dr. Lewittes provided expert testimony to explain Tiffany's failure to report the abuse earlier. Of course, the testimony of each of these witnesses was challenged by the defense, but the jury was entitled to credit it. Thus, Mr. Palmer's claim that the evidence was insufficient is without merit.

B. <u>Bill of Particulars</u>

Mr. Palmer contends in Ground 2 of his Petition that his constitutional rights were violated because he was forced to proceed to trial without having received the supplemental bill of particulars and, in Ground 7, that the trial court was without jurisdiction to proceed to trial under those circumstances.

The Appellate Division held that "[s]ince [Mr. Palmer] did not object to going to trial without having received a court-ordered supplemental bill of particulars, he waived his right to a stay of the trial[.]" <u>Palmer</u>, 7 A.D.3d at 472-73, 778 N.Y.S.2d at 145. A procedural default generally bars a federal court from reviewing

the merits of a habeas claim. <u>Wainwright v. Sykes</u>, 433 U.S. 72, 86-87 (1977). Federal habeas review is prohibited if a state court rests its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." <u>Cotto v. Herbert</u>, 331 F.3d 217, 238 (2d Cir. 2003) (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991)). A state procedural bar qualifies as an "independent and adequate" state law ground where "'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" <u>Levine v. Commissioner of Correctional Services</u>, 44 F.3d 121, 126 (2d Cir. 1995) (quoting <u>Harris v. Reed</u>, 489 U.S. 255, 263 (1989)).

Here, the Appellate Division's application of a procedural bar appears to have been erroneous. In ruling on the petitioner's 440.10 motion, Justice Cirigliano noted that a statutory stay had already been in effect pursuant to CPL 200.95(6) and that "defense counsel [had] brought the [prosecution's] failure to comply to the Court's attention. That the Court decided to vacate the stay and proceed to trial can not be ascribed to an omission on counsel's part." (440.10 Decision at 5). If, as the trial court concluded, Mr. Palmer's attorney did all he could to prevent the case from proceeding before receiving the supplemental bill of particulars, there was no procedural default.

Nevertheless, the petitioner's claim fails because it is based

exclusively on state law.  As Justice Cirigliano noted, the right to a stay pending production of a bill of particulars ordered by the court derives from Section 200.95 of the New York Criminal Procedure Law.  As discussed above, a claim grounded in state law is not reviewable on habeas corpus.

Mr. Palmer's claim that the court was without jurisdiction to try him until the prosecution had complied with the directive to provide a supplemental bill of particulars is procedurally defaulted.  As Justice Cirigliano concluded, the record was sufficient for Mr. Palmer to raise that claim in his direct appeal, but he failed to do so.  (440.10 Decision at 4).  In any event, the claim is also grounded exclusively in state law and raises no constitutional issue.

C. Sufficiency of the Indictment

Next, Mr. Palmer asserts in Ground 3 of his Petition that the indictment was insufficient because it provided no specific allegations as to when or where the crimes occurred.  Under constitutional due process principles, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); accord United States v. Resendiz-Ponce, __ U.S. __, __, 127 S. Ct. 782, 788

(2007).  In this case, the charge on which the petitioner was convicted -- engaging in a Course of Sexual Conduct Against a Child -- satisfied these requirements.

In cases of continuing sexual abuse, it is sufficient for the indictment to specify "a period of time -- rather than a specific date -- in which defendant committed the acts at issue . . . especially where, as here, the complaining victim was a child." Edwards v. Mazzuca, No. 00 Civ. 2290, 2007 WL 2994449, at *5 (S.D.N.Y. Oct. 15, 2007).  Because child victims are often not capable of remembering the exact dates when the alleged acts occurred, "fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements." Valentine v. Konteh, 395 F.3d 626, 632 (6th Cir. 2005); see also LaBelle v. Beauclair, No. CV02-0267, 2005 WL 1869027, at *9 & n.8 (D. Idaho Aug. 5, 2005); Rodriguez v. Hynes, No. CV-94-2010, 1995 WL 116290, at *4 (E.D.N.Y. Feb. 27, 1995). Indeed, if the abuse alleged took place continuously over a period of time, the length of that period will not render the indictment constitutionally defective so long as the period is defined in the indictment.

Here, the indictment, together with the bill of particulars, specified the acts that Mr. Palmer was alleged to have committed and the period of time during which he committed them.  There is no suggestion that the prosecution withheld more detailed information

18

from the petitioner.  Nor has Mr. Palmer demonstrated prejudice. Tiffany's testimony at trial did not catch defense counsel by surprise by presenting evidence of more specific dates.  Therefore, there was no violation of the petitioner's right to adequate notice.

    D. <u>The Prosecution's Expert Witness</u>

    Three of Mr. Palmer's claims relate to the prosecution's expert witness, Dr. Lewittes.  In Ground 4, he asserts that the expert improperly based his opinion on allegations supplied by the prosecutor.  In Ground 5, he expands on this argument, contending that, because he never had the opportunity to cross-examine the assistant district attorney who supplied the allegations, he was denied his Sixth Amendment right to confront witnesses.  And, in Ground 6, he argues that he was entitled to a mistrial or an order striking Dr. Lewittes' testimony in view of these legal errors. The petitioner's claims are without merit.

    Dr. Lewittes provided information about child sexual abuse syndrome.  The gravamen of his testimony was that abused children often go through a period of secrecy during which they do not report the abuse, even to a non-abusing parent.  They are often capable of interacting normally with an abusive parent in the presence of others.  When a child does report abuse, it may be in response to an external stimulus such as a television program urging children to disclose such episodes, and it is common for a

child to disclose the abuse first to a friend.  (Tr. at 315-14).

On direct examination, Dr. Lewittes made clear that he had neither

examined Tiffany nor reviewed any of her records.  He stated,

> I do not examine a child or records in a criminal matter
> so that it's absolutely clear that I do not factually
> know whether or not something did or did not occur.  I'm
> only going to talk about the general way children react
> when they're sexually abused.  I do not know anything
> specifically about this matter.

(Tr. at 316).  On cross-examination, defense counsel probed further

the information that Dr. Lewittes had obtained prior to testifying:

> Q. Did you discuss with [the assistant district attorney]
> prior to coming in today testimony, the facts of this
> case?
>
> A. [The assistant district attorney] did apprize me of
> certain information that she said were facts, yes.
>
> Q. And regarding the facts in this case, did she tell you
> that it was a stepfather, stepdaughter situation?
>
> A. Yes.
>
> .    .    .
>
> Q. It would be fair to say that you don't know whether or
> not Tiffany [] was ever raped in this case?
>
> A. That's correct.

(Tr. at 336, 338).

"Because the dynamics of sexual abusive relationships are not

familiar to the average juror, New York courts permit experts to

explain the reactions of young victims of sexual abuse."  Eze v.

Senkowski, 321 F.3d 110, 131 (2d Cir. 2003) (citing People v.

Taylor, 75 N.Y.2d 277, 287, 552 N.Y.S.2d 883, 887 (1990); People v.

<u>Citron</u>, 75 N.Y.S.2d 249, 267, 552 N.Y.S.2d 68,77 (1990)). Dr. Lewittes' testimony concerning typical reactions of a child who experienced sexual abuse served this precise function in the petitioner's case.  In order for him to provide testimony that would be helpful to the jury, it was appropriate for him to know the prosecution's allegations: how old the victim was, her relationship to the alleged perpetrator, the nature of the purported acts.  Ultimately, he was responding to a set of hypothetical facts: if a child between six and ten years of age is raped by her stepfather, how might she be expected to behave?

Accordingly, there was nothing unlawful about the assistant district attorney advising Dr. Lewittes of what the prosecution hoped to prove at trial.  The prosecutor was not "testifying" such that the petitioner's confrontation rights would have been triggered, and the jury was free to find that the expert opinion was not adequately grounded in the evidence that was presented at trial.  Consequently, Justice Cirigliano did not violate Mr. Palmer's rights by declining to strike Dr. Lewittes' testimony or declare a mistrial.

E. <u>Effective Assistance of Counsel</u>

Finally, Mr. Palmer contends that his trial attorney was ineffective because (1) he failed to demand a stay of the proceedings pending production of the supplemental bill of particulars, (2) he did not object when Justice Cirigliano declined

21

to enforce Justice Globerman's order concerning the supplemental bill of particulars, (3) he did not call Suckeen Palmer as a witness, (4) he did not use certain documents to impeach Tiffany, and (5) he did not present evidence of the petitioner's medical condition. These claims are found in Grounds 8, 9, 10, 11, and 12 of the Petition.

In order to make out an ineffective assistance of counsel claim, the petitioner must demonstrate that (1) his counsel's performance was deficient, and (2) the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); accord Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). In assessing whether an attorney's performance was deficient, a reviewing court must determine whether his conduct "fell below an objective standard of reasonableness," given the facts and circumstances of the particular case. Strickland, 466 U.S. at 688. The court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The "prejudice" prong of the Strickland test requires a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," id. at 687, and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Mr. Palmer's claims with respect to the supplemental bill of

particulars fail both prongs of this test.  First, as noted above,
Justice Cirigilano proceeded to trial only after vacating the
statutory stay that had been in place.  Defense counsel <u>did</u> object
to the prosecution's failure to comply with Justice Globerman's
order, and, as noted by Justice Cirigilano, there was nothing
further that defense counsel could have done to change the
situation.  Second, the petitioner has not shown that receiving a
supplemental bill of particulars would have led to a different
outcome at trial.  Since the prosecution simply did not have more
particularized information to supply, the supplemental bill would
not have provided significant assistance to the defense.

The petitioner's argument that his attorney should have called
Suckeen Palmer to testify at trial is likewise without merit.
Nowhere does Mr. Palmer detail what evidence she might have
provided, other than he suggesting in his 440.10 motion that she
could have described the layout of the home, identified other
adults who lived there during the period that the abuse allegedly
took place, and described the petitioner's work schedule.  (440.10
Motion at 15-17).  However, the petitioner, who testified on his
own behalf, could have provided the same information, and indeed
did so to some extent.  Moreover, there is little reason to believe
that Suckeen would have testified in support of her husband.  She
is, of course, the mother of the abused child, and she had been
subjected to domestic violence by Mr. Palmer.  (CPS Investigation

Summary, attached to 440.10 Motion as Exh. E, at 10, 13). Thus, the petitioner's trial counsel had compelling strategic reasons not to have Suckeen testify.

Similarly, Mr. Palmer's attorney had plausible grounds for declining to use a variety of documents to cross-examine Tiffany. Counsel walked a fine line between undermining the victim's credibility and creating sympathy for her by bearing down too hard. Accordingly, it was not ineffective for defense counsel to forego relying upon a report in which Tiffany appeared to allege that the abuse had begun when she was three years old rather than six, as she testified at trial. (Arrest Report, attached as Exh. D to 440.10 Motion). Since Tiffany was only ten at the time of trial, any such inconsistency would have been attributed to anxiety or a lapse of memory. Likewise, counsel reasonably declined to argue that Tiffany had asserted and then recanted an earlier claim of sexual abuse against her uncle. (Handwritten Notes, attached as Exh. D to Pro Se App. Br.). The prosecution could have contrasted that episode to the present case, where Tiffany steadfastly maintained her accusations against Mr. Palmer. Nor was counsel incompetent for failing to direct the jury's attention to a class assignment in which Tiffany stated, "I don't really know anyone who has been abused in any way." (Essay by Tiffany T., attached as Exh C to Pro Se App. Br.). This could have been easily identified as a manifestation of child sexual abuse syndrome as testified to by

Dr. Lewittes.  The other documents that Mr. Palmer contends should have been used as ammunition by his defense attorney were even more tangential.

The petitioner also contends that his attorney should have raised the fact that Mr. Palmer had herpes simplex to argue that, had he abused Tiffany as alleged, he would have passed on the infection to her.  However, the petitioner has never submitted evidence concerning transmission rates of the disease.  In the absence of such proof, there is no basis for assessing the likelihood of Tiffany escaping infection notwithstanding her having been sexually abused by someone with the condition.  Accordingly, there has been no showing that the failure to explore this issue was prejudicial.

Thus, each of Mr. Palmer's claims of ineffective assistance of counsel is without merit.

<u>Conclusion</u>

For the reasons set forth above, I recommend that Mr. Palmer's application for a writ of habeas corpus be denied and that the petition be dismissed.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable P. Kevin Castel, Room

2260, and to the chambers of the undersigned, Room 1960, 500 Pearl
Street, New York, New York 10007.    Failure to file timely
objections will preclude appellate review.


Respectfully submitted,

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          March 18, 2008

Copies mailed this date:

Devrol Palmer
01-A-4746
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953

Andrew S. Holland, Esq.
Assistant District Attorney
198 East 161st Street
Bronx, New York 10451